UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **AMARAVATHI LIMITED PARTNERSHIP,** | § | Case No. 09-32754-H1-11 |
| | § | |
| Debtor, | § | |
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| **AMARAVATHI KEERTHI, LLC,** | § | Case No. 09-32755-H5-11 |
| | § | |
| Debtor, | § | |
| | § | |

**EMERGENCY MOTION FOR INTERIM AND
FINAL ORDER (I) AUTHORIZING THE USE OF CASH
COLLATERAL PURSUANT TO BANKRUPTCY CODE § 363(c);
(II) GRANTING ADEQUATE PROTECTION PURSUANT TO § 363; AND
<u>(III) SETTING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)</u>**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

**EMERGENCY CONSIDERATION OF THIS MOTION HAS BEEN SOUGHT. A HEARING HAS BEEN SET FOR FRIDAY APRIL 24, 2009 AT 4:00 P.M. BEFORE THE HONORABLE JUDGE MARVIN ISGUR, COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.**

Amaravathi Limited Partnership and Amaravathi Keerthi, LLC (the "Debtors") hereby file this Emergency Motion for Interim and Final Order (i) Authorizing the Use of Cash Collateral Pursuant to Bankruptcy Code § 363(c); (ii) Granting Adequate Protection Pursuant to Bankruptcy Code § 363(c); and (iii) Setting Final Hearing Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") (the "Motion"), and in support thereof would respectfully show the Court as follows:

## I. Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Reference of the United States Bankruptcy Court for the Southern District of Texas. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(M). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## II. Background

2.     On April 23, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. section 101, *et seq.* (the "Bankruptcy Code") in this Court (the "Petition Date"). The Debtors intend to operate their business and manage their properties as debtors and debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. This Court has not appointed a trustee or examiner nor has any official committee been established in this bankruptcy case.

**A.     The Debtors' Business**

3.     The Debtors are Houston based companies that develop, manage and lease upscale apartment complexes throughout the State of Texas. The Debtors currently own and operate the following four apartment complexes: (1) Mansions on Green I, located at 7710 O'Connor Drive, Round Rock, Williamson County, Texas 78681 (the "Green I Property"); (2) Mansions on Green II, located at 7720 O'Connor Drive, Round Rock, Williamson County, Texas

78681 (the "Green II Property"); (3) Mansions at Canyon Creek, located at 9001 N UR-620 Austin, Travis County, Texas 78726 (the "Canyon Creek Property"); and (4) Mansions at Steiner Ranch, located at 4500 Steiner Ranch Blvd., Austin, Travis County, Texas 78732 (the "Steiner Ranch Property") (collectively, the "Properties").

4. The Debtors generate the majority of their revenue through rental income associated with the Properties. The Debtors have approximately 1,200 tenants in the Properties.

**B.   Capital Structure**

5. In December 2006, the Debtors entered into four separate promissory notes for the Green I Property, Green II Property, Canyon Creek Property and Steiner Ranch Property, respectively, with Column Financial, Inc. (the "Original Noteholder") in the cumulative original principal amount of $180,234,000.00. Each of the notes is secured by a separate Deed of Trust and Security Agreement, Cash Management Agreement, and Assignment of Leases and Rents. Pursuant to various assignments, endorsements and/or transfers, the notes and underlying security interests are currently held by Wells Fargo Bank, N.A., as trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Pass-Through Certificates, Series 2007-C1 (the "Wells Fargo Notes" held by the "Noteholders"). Details regarding the Wells Fargo Notes are described below in greater detail.

6. In addition to its secured creditor, the Debtors owe approximately $9.5 million to unsecured creditors.

### III.   The Wells Fargo Notes

7. As set forth above, the Debtors have four separate outstanding promissory notes pursuant to the Wells Fargo Notes. The current outstanding principal balance on the Wells Fargo Notes is $180,234,000.00. The Wells Fargo Notes are evidenced by the following instruments:

3

(i) Promissory Note dated December 28, 2008, between the Debtors and the Original Noteholder in connection with the Green I Property;

(ii) Promissory Note dated December 28, 2008, between the Debtors and the Original Noteholder in connection with the Green II Property;

(iii) Promissory Note dated December 28, 2008, between the Debtors and the Original Noteholder in connection with the Canyon Creek Property;

(iv) Promissory Note dated December 28, 2008, between the Debtors and the Original Noteholder in connection with the Steiner Ranch Property;

(v) Deed of Trust and Security Agreement dated December 28, 2006, in favor of the Original Noteholder in connection with the Green I Property;

(vi) Deed of Trust and Security Agreement dated December 28, 2006, in favor of the Original Noteholder in connection with the Green II Property;

(vii) Deed of Trust and Security Agreement dated December 28, 2006, in favor of the Original Noteholder in connection with the Canyon Creek Property;

(viii) Deed of Trust and Security Agreement dated December 28, 2006, in favor of the Original Noteholder in connection with the Steiner Ranch Property;

(ix) Green I Assignment of Leases and Rents dated December 28, 2006, in favor of Original Noteholder;

(x) Green II Assignment of Leases and Rents dated December 28, 2006, in favor of Original Noteholder;

(xi) Canyon Creek Property Assignment of Leases and Rents dated December 28, 2006, in favor of Original Noteholder;

(xii) Steiner Ranch Assignment of Leases and Rents dated December 28, 2006, in favor of Original Noteholder;

(xiii) Assignment of Deed of Trust and Security Agreement dated August 7, 2008 between Original Noteholder and Noteholders in connection with the Green II Property;

(xiv) Assignment of Deed of Trust and Security Agreement dated August 7, 2008 between Original Noteholder and Noteholders in connection with the Canyon Creek Property;

(xv) Assignment of Deed of Trust and Security Agreement dated August 7, 2008 between Original Noteholder and Noteholders in connection with the Steiner Ranch Property;

8. In April 2009, the Noteholders, acting by and through Midland Loan Services, Inc. as special servicer, alleged certain defaults on the Wells Fargo Notes, and thereafter initiated proceedings in Williamson County, Texas to obtain a temporary restraining order against the Debtors and appoint a receiver for the Properties. Without any notice to the Debtors and without any hearing wherein Debtors could present any evidence or opposing arguments, on April 22, 2009, the Williamson County Court entered the temporary restraining order and ordered the appointment of receiver for the Properties. Upon appointment, Mr. Jay Parmmelee, the receiver, commenced actions to gain possession of the Properties, including changing locks at certain of the Properties.

9. The Wells Fargo Notes are secured by first priority liens on substantially all of the Debtors' assets, including but not limited to, all real property, leases, rents and accounts (the "Wells Fargo Cash Collateral"). The Debtors use the Wells Fargo Cash Collateral on a daily basis to repay preexisting liabilities and to fund operations in the ordinary course of the Debtors' business.

### IV. Request for Temporary and Final Use of Cash Collateral

10. The Debtors cannot meet their ongoing postpetition obligations unless they can use the assets claimed as cash collateral by the Noteholders. The Debtors must have access to use of its rents and leases in the ordinary course of business and must be able to use the monies collected to pay its normal operating expenses.

11. In the interim period, the Debtors request immediate authority from the Court to use the Wells Fargo Cash Collateral in the ordinary course of business on a temporary basis pending a final hearing on this Motion, pursuant to the 10 day budget attached to the annexed order as Exhibit A.

12.     The Debtors request the authority to use up to $244,248.66 in Wells Fargo Cash Collateral during the two week interim period before entry of a final order in order to operate the business in the ordinary course, based upon the budget attached as "Exhibit A."  The Debtors will use the Wells Fargo Cash Collateral to fund their business operations and payroll, and otherwise preserve the value of the business as a going concern and maintain the Properties.

13.     Under Bankruptcy Code § 363(c)(2), the Debtors may not use, sell or lease the Wells Fargo Cash Collateral without the Court's authority or the Noteholders' consent.  Bankruptcy Code § 363(e) allows the Court to grant this authority upon the provision of adequate protection to the Noteholders.

14.     Pursuant to Bankruptcy Code § 361(2), the Debtors will adequately protect the Noteholders by granting replacement liens on the assets on which the Noteholders currently have a valid security interest.  Such replacement liens will have the same priority as the Noteholders' prepetition liens and not be primed or subordinated to any postpetition financing or liens obtained or granted by the Debtors in this case.  Although, based on the Debtors' cash flow projections, the Debtors do not believe that there will be any diminution in the value of the Wells Fargo Cash Collateral during the applicable period, the Noteholders are further adequately protected by Bankruptcy Code § 507(b), which grants the Noteholders an administrative expense claim for any diminution in the value of the Wells Fargo Cash Collateral.

15.     The Debtors have not undertaken an investigation into the extent or validity of the Noteholders' liens and, notwithstanding this Motion, reserve the right to challenge the extent and validity of their liens, if necessary.

16.     The Debtors request the continued authority to use the Wells Fargo Cash Collateral beyond the interim period in order to continue their business operations, maintain their going concern value, and confirm a plan of reorganization.  The Debtors need to use the Wells

Fargo Cash Collateral to continue during the pendency of this case. By using the Wells Fargo Cash Collateral to pay customary and necessary postpetition operating expenses, the Debtors will preserve the going concern value of the Debtors' business.

17. The immediate and temporary approval of the use of the Wells Fargo Cash Collateral proposed is consistent with the requirements for: (i) maintaining the going concern value of the Debtors' business operations; (ii) the law under Bankruptcy Code §§ 363 (regarding the use of cash collateral) and 361 (regarding adequate protection); and (iii) facilitating a successful reorganization of the Debtors' business under Chapter 11. Use of cash collateral is also required to maintain the safety and upkeep of the Properties and the comfort and safety of the Properties' tenants. The relief requested is in the best interests of the secured creditors and the Debtors' estates.

18. The failure to authorize the immediate use of the Wells Fargo Cash Collateral will result in a swift and significant deterioration of the Debtors' business, and could ultimately result in the cessation and liquidation of the Debtors' business. A shut down of operations would leave the Debtors' employees without means of support and would diminish the distribution to unsecured creditors in this case.

19. The Debtors also request that this Court schedule a hearing for final approval of the use of the Wells Fargo Cash Collateral, in the event an objection is filed to the terms of the interim order, on notice to creditors and parties in interest, and that Debtors be permitted to use Wells Fargo Cash Collateral in accordance with the 30 day budget attached as "Exhibit B."

## V. Request for Emergency Hearing

20. Pursuant to Bankruptcy Rule 4001(c), the Debtors request that the Court conduct an expedited preliminary hearing on the Motion (the "Preliminary Hearing"), and enter an interim order authorizing the Debtors to use the Wells Fargo Cash Collateral to the extent

necessary to avoid immediate and irreparable harm to the estates. This relief will enable the Debtors to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to their estates and all parties in interest pending a final hearing to use the Wells Fargo Cash Collateral. In particular, the Debtors have an immediate need to fund payroll, utilities, vendors, and other ongoing expenses in the ordinary course of business, as identified in Exhibit A. Without access to the Wells Fargo Cash Collateral, the Debtors' going-concern viability will be jeopardized.

21. Notice of this Motion has been served in accordance with Bankruptcy Rules 4001 and 9014 on the following parties: (i) the Noteholders; (ii) the twenty largest creditors; (iii) the United States Trustee; (iv) the Internal Revenue Service and other governmental entities required to receive notice under Bankruptcy Rule 2002(j); and (v) certain other creditors and parties in interest. Given the emergency nature of the relief requested, no other notice may practically be given or need be given for the interim relief sought. The described notice is sufficient to protect the rights and interests of creditors, considering: (i) the limited relief requested; (ii) the ability to seek further review; and (iii) the consequences that will arise if the relief is not granted. A copy of Exhibit A and B budgets have been shared with counsel for the lenders.

## VI. Legal Authority

22. The Bankruptcy Code contemplates a debtor's use of collateral during the reorganization of its business. Bankruptcy Code §§ 102(1) and 363 provide that collateral may be used upon notice and an opportunity for a hearing as appropriate in the particular circumstances. Relief may be authorized without an actual hearing if there is insufficient time available and adequate protection has been provided. 11 U.S.C. § 363(e). The combination of the Debtors' emergency needs to satisfy "first day" obligations and current operating needs, together with the provisions for adequate protection, are sufficient to authorize the interim use of

the collateral proposed. *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 410 (Bankr. N.D. Tex. 2003); *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988).

      23.      Bankruptcy Code § 361 sets forth various types of adequate protection that the debtor may provide, including:

> (i)    making periodic cash payments to the extent that the creditor suffers a decrease in the value of its interest in such property;
>
> (ii)    granting replacement liens in collateral to compensate the creditor for any decrease in the value of the creditor's interest in such property; or
>
> (iii)    granting other relief as will result in the realization of the indubitable equivalent of the creditor's interest in collateral.

11 U.S.C. § 361.

      24.      The Debtors in this case have satisfied the Noteholders' entitlement to adequate protection of its respective interests in the Debtors' assets. The Debtors will adequately protect the Noteholders from the Debtors' proposed use of the Wells Fargo Cash Collateral by: (i) granting the Noteholders postpetition replacement liens on the assets on which the Noteholders currently have a valid security interest, which will have the same priority as the Noteholders' prepetition liens and not be primed or subordinated to any postpetition financing or liens obtained or granted by the Debtors in this case; and (ii) affording the Noteholders all protections under Bankruptcy Code § 507(b).

      25.      WHEREFORE, the Debtors request that the Court authorize the use, sale or lease of the Wells Fargo Collateral up to $244,248.66 in accordance with the budget attached hereto as "Exhibit A" on an interim basis and, upon setting and conducting a final hearing, issue a final order authorizing the use, sale or lease of the Wells Fargo Cash Collateral and priority for continued use of the Wells Fargo Cash Collateral in accordance with the 30 day budget attached as "Exhibit B," with the adequate protections offered to the Noteholders as set forth herein, and grant any other relief that is just, proper and equitable.

Dated: April 23, 2009.

                                                     DIAMOND McCARTHY LLP

                                      By:    */s/* Kyung S. Lee
                                                      Kyung S. Lee
                                                      klee@diamondmccarthy.com
                                                      TBA No. 12128400
                                                      Jason M. Rudd
                                                      jrudd@diamondmccarthy.com
                                                      TBA No. 24028786
                                                      Brian A. Abramson
                                                      babramson@diamondmccarthy.com
                                                      TBA No. 24050193
                                                      909 Fannin, Suite 1500
                                                      Houston, Texas 77010
                                                      Telephone:  (713) 333-5100
                                                      Facsimile:   (713) 333-5195

                                                      PROPOSED ATTORNEYS FOR DEBTORS AND
                                                      DEBTORS IN POSSESSION

## **CERTIFICATE OF SERVICE**

     I certify that on April 23, 2009, a copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas to all parties registered to receive such service; and (ii) transmitted via facsimile, overnight delivery and/or via U.S. Mail, first class to those parties as indicated on the attached proposed Master Service List.

                                                    */s/* Kyung S. Lee
                                                    Kyung S. Lee

## **CERTIFICATE OF CONFERENCE**

     I certify that I conferred by phone with William Greendyke, counsel for the Noteholders, on April 23, 2009 concerning the substance of the foregoing Motion.  Negotiations are ongoing regarding the relief requested in this Motion, but since agreement could not be reached, this Motion is filed for the Court's consideration.

                                                    */s/* Kyung S. Lee
                                                    Kyung S. Lee

## SERVICE LIST

**Debtor**:

Amaravathi Limited Partnership
4420 FM 1960 West, Suite 224
Houston, TX  77068

Amaravathi Keerthi, LLC
4420 FM 1960 West, Suite 224
Houston, TX  77068

**Counsel for Debtor**:

Kyung S. Lee
Jason M. Rudd
Brian Abramson
Diamond McCarthy LLP
909 Fannin, Suite 1500
Houston, TX  77010

**U.S. Trustee**:

Office of the U.S. Trustee
515 Rusk, Room 3516
Houston, TX  77002

**Government Entities**:

Internal Revenue Service
Special Procedures Staff, STOP 5022-HOU
P O Box 52557
1919 Smith Street
Houston, TX  77002-5557

Bankruptcy Section
Securities & Exchange Commission
175 W. Jackson Boulevard, Suite 900
Chicago, IL 60604

**Secured Creditors**:

Wells Fargo Bank, N.A., Trustee
c/o Norlynn B. Price
William Greendyke
Fulbright & Jaworski LLP
2200 Ross Avenue, Suite 2800
Dallas, TX  75201-2784

Rubicon Capital America, LLC
Attn: James Blessing
900 N. Michigan Avenue, Suite 1400
Chicago, IL  60611-6522

Rubicon Capital Trust
Attn: Gordon Fell
Level 2
287-289 New South Head Road
Edgecliff, NSW 2027

DLA Piper US LLC
Attn: Lawrence E. Uchill, Esq.
33 Arch Street, 26th Floor
Boston, MA  02110

**Twenty Largest Unsecured Creditors:**

CNC Trust
4420 FM 1960 West, Suite 224
Houston, TX  77068

Carpet Warehouse
10717 C Research Blvd.
Austin, TX  78759

Wilmar Industries, Inc.
PO Box 404284
Atlanta, GA  30384

UCS Cleaning Specialist
f/k/a Univ Cleaning Specialists
1834 Ferguson Ln., Suite 1000
Austin, TX  78754

166657_1.DOC

Baker & McKenzie, LLP
One Prudential Plaza, Suite 3500
130 East Randolph Drive
Chicago, IL  60601-6384

City of Austin
PO Box 2267
Austin, TX  78783-2267

Benchmark Landcapes
8910 Research Blvd, Suite F-1
Austin, TX  78758

Austin Titan Fire Protection
131 W. Austin Ave., #200
Hutto, TX  78634

Brushy Creek MUD
16318 Great Oaks Dr.
Round Rock, TX  78681-5685

WW Advertising
12023 Silvera Bend Lane
Cypress, TX  77433

Rasa Floors
PO Box 619130
Dallas, TX  75261-9130

A-1 Perfect Cleaning
3304 Roundabout Lane
Round Rock, TX  78664

The Rock Painting & Cleaning
PO Box 152528
Austin, TX  78715

JC Painting & Cleaning
2245 South Lennox Street
Milwaukee, WI  53207

E-Z Washer Dryer Leasing
PO Box 90937
Austin, TX  78709-0937

Lone Star Enterprises, LLP
PO Box 1666
Buda, TX  78610

Cort Furniture Rental
4646 Perrin Creek Dr, Suite 260
San Antonio, TX  78217

Network Communications, Inc -
Apartment Finder Magazine
PO Box 402168
Atlanta, GA  30384-2168

Allied Waste Services
PO Box 78829
Phoenix, AZ  85062

John Bergeron Construction
1602 Spiderlilly View
Cedar Park, TX  78613

# EXHIBIT A

## Amaravathi Partnership Cash Collateral Budget
Next 10 Days

|  | Canyon Creek | Round Rock | Steiner Ranch | Total |
|---|---|---|---|---|
| Anticipated Collections in next 10 days | 98,931.00 | 151,859.10 | 159,277.80 | 410,067.90 |
| Expenses need to be paid in next 10 days |  |  |  |  |
|    Payroll | 14,405.20 | 33,724.12 | 32,509.18 |  |
|    Utilities | 35,750.00 | 37,650.00 | 41,225.00 |  |
|    Other Expenses | 8,957.52 | 23,884.04 | 16,143.60 |  |
|  | 59,112.72 | 95,258.16 | 89,877.78 | 244,248.66 |

# EXHIBIT B

**Amaravathi Partnership Cash Budget**

# of Units                     1417

|  | May |
|---|---:|
| **Sources** | |
| Net Rental Income | 1,212,275 |
| Total Other Income | 77,863 |
| **GROSS OPERATING INCOME** | 1,290,137 |
| | |
| **Uses** | |
| Total Utility Expenses | 96,988 |
| Total Payroll | 172,324 |
| Total Administrative Expenses | 104,372 |
| Total Maintenance | 148,221 |
| Capital Expenditures | 28,326 |
| Taxes & Insurance & Management | 439,502 |
| Professional Services | 50,000 |
| **GROSS OPERATING EXPENSE** | 1,027,233 |
| | |
| **NET OPERATING INCOME** | 323,215 |

## Canyon Creek Cash Budget

# of Units                              **332**

9001 Ranch Road 620 North
Austin, TX 78726

|  | May |
|---|---:|
| **Sources** | |
| Net Rental Income | **300,657** |
| Total Other Income | **12,855** |
| **GROSS OPERATING INCOME** | **313,512** |
| | |
| **Uses** | |
| Total Utility Expenses | 31,135 |
| Total Payroll | 40,359 |
| Total Administrative Expenses | 29,849 |
| Total Maintenance | 41,696 |
| Capital Expenditures | 7,744 |
| Taxes & Insurance & Management | 92,095 |
| Miscellaneous | |
| **GROSS OPERATING EXPENSE** | **242,878** |
| | |
| **NET OPERATING INCOME** | **71,477** |

**Steiner Ranch Cash Budget**

# of Units       502

4500 Steiner Ranch Blvd
Austin, TX 78732

|  | May |
|---|---:|
| **Sources** | |
| Net Rental Income | 463,950 |
| Total Other Income | 41,457 |
| **GROSS OPERATING INCOME** | **505,407** |
| | |
| **Uses** | |
| Total Utility Expenses | 27,488 |
| Total Payroll | 66,013 |
| Total Administrative Expenses | 49,742 |
| Total Maintenance | 47,767 |
| Capital Expenditures | 9,700 |
| Taxes & Insurance & Management | 174,466 |
| Miscellaneous | |
| **GROSS OPERATING EXPENSE** | **375,176** |
| | |
| **NET OPERATING INCOME** | **142,742** |

**Round Rock Cash Budget**

| | |
|---|---|
| # of Units | **583** |

7710 O'Connor Drive
7720 O'Connor Drive
Round Rock, TX 78681

| | May |
|---|---:|
| **Sources** | |
| Net Rental Income | 447,668 |
| Total Other Income | 23,550 |
| **GROSS OPERATING INCOME** | **471,218** |
| | |
| **Uses** | |
|   Total Utility Expenses | 38,366 |
|   Total Payroll | 65,953 |
|   Total Administrative Expenses | 24,780 |
|   Total Maintenance | 58,757 |
|   Capital Expenditures | 10,882 |
|   Taxes & Insurance & Management | 172,941 |
|   Miscellaneous | |
| **GROSS OPERATING EXPENSE** | **371,679** |
| | |
| **NET OPERATING INCOME** | **108,997** |