IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** § | | |
| § | | |
| **AMARAVATHI LIMITED** § | Case No. 09-32754 | |
| **PARTNERSHIP,** § | | |
| § | Chapter 11 Case | |
| Debtor. § | | |

| | | |
|---|---|---|
| § | | |
| **In re:** § | Case No. 09-32755 | |
| § | | |
| **AMARAVATHI KEERTHI, LLC,** § | Chapter 11 Case | |
| § | | |
| Debtor. § | Jointly Administered Under | |
| § | Case No. 09-32754-H1-11 | |

| | | |
|---|---|---|
| § | | |
| **C1 Trust,** § | | |
| § | | |
| Movant, § | Contested Matter:  Claim Objection | |
| § | | |
| v. § | | |
| § | RE: Claim No. 30 | |
| **CNC Investments,** § | | |
| § | | |
| Claimant. § | | |

**C1 TRUST'S AMENDED OBJECTION TO**
**PROOF OF CLAIM FILED BY CNC INVESTMENTS**
[Relates to Claim No. 30]

**NOTICE UNDER BLR 3007-1(C)**

THIS IS AN OBJECTION TO YOUR CLAIM.  THE OBJECTING PARTY IS ASKING THE COURT TO DISALLOW THE CLAIM THAT YOU FILED IN THIS BANKRUPTCY CASE.  YOU SHOULD IMMEDIATELY CONTACT THE OBJECTING PARTY TO RESOLVE THE DISPUTE.  IF YOU DO NOT REACH AN AGREEMENT, YOU MUST FILE A RESPONSE TO THIS OBJECTION AND SEND A COPY OF YOUR RESPONSE TO THE OBJECTING PARTY WITHIN 20 DAYS AFTER THE OBJECTION WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE OBJECTION IS NOT VALID.  IF YOU DO NOT FILE A RESPONSE WITHIN 20 DAYS

85432929.3

**AFTER THE OBJECTION WAS SERVED ON YOU, YOUR CLAIM MAY BE DISALLOWED.**

**A HEARING HAS BEEN SET ON THIS MATTER ON MARCH 22, 2010, AT 10:00 A.M. (CENTRAL TIME) BEFORE THE HONORABLE MARVIN ISGUR, IN COURTROOM 404, 4TH FLOOR, IN THE UNITED STATES COURTHOUSE, 515 RUSK ST., HOUSTON, TEXAS 77002.**

_____

Wells Fargo Bank, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1 ("**C1 Trust**"), acting by and through Midland Loan Services, Inc., a Delaware corporation, as special servicer pursuant to that certain Pooling and Service Agreement dated March 1, 2007, a secured creditor and party-in-interest herein, hereby files this Amended Objection (the "**Objection**") to Proof of Claim (the "**Claim**") Filed by CNC Investments ("**CNC**"), and would respectfully show the Court as follows:

### I.     PRELIMINARY STATEMENT

1.     CNC, an insider to the Debtors (defined below), filed a proof of claim in the amount of $9,102,804.00 and asserts priority status, in an undetermined amount, pursuant to section 507(a)(4) and (8) of the Bankruptcy Code for monies loaned and services rendered, including advances for payroll, payroll taxes, and property taxes.

2.     The Claim is objectionable pursuant to section 502(b) and Rule 3001(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") because the Claim was filed without the requisite back-up documentation setting forth the basis of the Claim. In fact, other than a nondescript chart showing amounts purportedly loaned and an unintelligible account schedule from the Debtors suggesting monies received by various entities – only one of which is the claimant – there is no documentation supporting the Claim. There is no loan documentation, no indication of services provided, and no evidence that the claimant, in fact, owns the claim.

3.      Moreover, to the extent the Claim is based on "money loaned," it should be recharacterized as an equity contribution and afforded priority status consistent with equity interests.  On information and belief, the failure to attach loan documents to the Claim was not an oversight, but was indicative of the fact that no such loan documents were created.  The intent of the parties at the time funds were allegedly transferred was for CNC and/or its constituents to make a capital infusion to protect their equity.  As described more fully herein, without proof of repayment terms, interest provisions, or any other traditional loan-based formality, recharacterization is warranted.

4.      Finally, CNC's request for priority status is without merit.  C1 Trust is unaware of any law that provides CNC – an insider, best described as an equity interest holder – with a priority claim pursuant to sections 507(a)(4), which protects employees, or 507(a)(8), which is reserved for "governmental units."  Indeed, section 507(d) prohibits any such purported subrogation of priority.  This portion of CNC's claim should thus be stricken.

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper in this Court under 28 U.S.C. §§ 1408.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Debtors' Business and Loan History**

6.      Amaravathi Limited Partnership ("**Amaravathi LP**") and Amaravathi Keerthi, LLC ("**Keerthi**" and together with Amaravathi LP, "**Debtors**") own and operate apartment

complexes in Austin and Round Rock, Texas.[1]  Debtors generate their revenue in whole through renting and/or leasing the Properties.

7.    When the Debtors acquired the Properties in December 2006, they entered into substantially identical loan documentation for each of the four Properties.  Accordingly, C1 Trust is the current holder of four promissory notes (the "**Notes**") corresponding to each Property, which are backed by, among other things, four separate but substantially identical: (a) Deeds of Trust and Security Agreements, (b) Assignments of Leases and Rents, and (c) Cash Management Agreements (collectively, together with all other relevant documentation,[2] the "**Loan Documents**").  The Loan Documents provide C1 Trust with first priority liens and other rights to substantially all of Debtors' assets.  The current total outstanding principal balance owed to the C1 Trust by the Debtors is approximately $160,000,000.00.[3]

B.    <u>Appointment of a State Court Receiver</u>

8.    On April 22, 2009, C1 Trust filed Plaintiff's Original Petition and Application for Appointment of a Receiver and Temporary Restraining Order (the "**Application for Receiver**") in state district court in Williamson County, Texas.  In that pleading C1 Trust asserted that Debtors were in default under the Loan Documents because, *inter alia*, Debtors had failed to make debt service payments when due and had failed to deposit all rents into the lockbox account (described therein) in March and April of 2009.

---

[1] Mansions on Green I and Mansions on Green II located in Round Rock, Texas and Mansions at Canyon Creek and Mansions at Steiner Ranch located in Austin, Texas are collectively referred to hereafter as the "**Property**" or "**Properties**."

[2] A summary of the Loan Documents and a representative copy of each is attached as Exhibit A to C1 Trust's Motion for Relief from Stay [Dkt. No. 48].  Pursuant to order dated April 24, 2009, these cases are jointly administered.  Thus all docket citations shall hereafter refer to *In re Amaravathi Ltd. P'ship*, No. 09-32754.

[3] *See* Debtors' Disclosure Statement Under 11 U.S.C. § 1125 in Support of Plan of Reorganization (the "**Disclosure Statement**"), p. 15 [Dkt. No. 50].

9.      Based on the evidence presented, on April 22, 2009, the state court entered an order appointing a receiver and a temporary restraining order. The receiver immediately took possession and control of the Green I, Green II, and Canyon Creek properties and took every available measure to take possession of the Steiner Ranch property. The receiver ultimately obtained possession and control of the Steiner Ranch property on the following morning, April 23, 2009.

C.      **The Debtors' Bankruptcy Cases**

10.     On April 23, 2009, Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

11.     Also on April 23, 2009, Debtors filed their Emergency Motion for Interim and Final Order (I) Authorizing the Use of Cash Collateral Pursuant to Bankruptcy Code § 363(c); (II) Granting Adequate Protection Pursuant to § 363; and (III) Setting Final Hearing Pursuant to Bankruptcy Rule 4001(b) (the "**Cash Collateral Motion**") [Dkt. No. 2].

12.     On May 5, 2009, C1 Trust filed its Limited Objection and Reservation of Rights Regarding Debtors' Use of Cash (the "**Limited Cash Collateral Objection**") [Dkt. No. 29]. And on May 14, 2009, C1 Trust filed its Objection to the Cash Collateral Motion (the "**Cash Collateral Objection**") [Dkt. No. 43]. The Limited Cash Collateral Objection and Cash Collateral Objection, *inter alia*, objected to Debtors' categorization of absolutely assigned rents as property of the estate and use of those rents as cash collateral.

13.     On May 19, 2009, Debtors filed their Plan of Reorganization (the "**Plan**") and Disclosure Statement [Dkt. Nos. 49 and 50, respectively].

14.     On May 20, 2009, the Court held an evidentiary hearing and received argument from the parties to determine whether Debtors may use rents as cash collateral. The Court issued a preliminary oral ruling that rents may be used as cash collateral and established an expedited

schedule for approval of the Disclosure Statement and confirmation of the Plan. On June 4, 2009, the Court entered the Corrected Final Order Authorizing the Debtors' Use of Cash Collateral [Dkt. No. 67].

15. On June 15, 2009, C1 Trust filed its Notice of Appeal of the Corrected Final Order Authorizing the Debtors' Use of Cash Collateral and was subsequently granted permission to appeal the order directly to the Fifth Circuit Court of Appeals. *See* Case No. 09-20670 (5th Cir. 2009). Pending the parties' consensual marketing of the Properties and settlement discussions relating thereto, as more fully described below, C1 Trust's appeal has been stayed until further notice from the parties.

### D. The Joint Marketing Proposal

16. In August 2009, C1 Trust and Debtors presented to the Court that certain Joint Marketing Proposal (the "**Joint Marketing Proposal**") Submitted by the Debtors and C1 Trust, which contemplated, *inter alia*, exposing the Properties to the market to determine their value. As reported to the Court at various status hearings, the marketing process has been fruitful, indicating a value of the Properties far in excess of that which was proposed in the Debtors' original Plan and Disclosure Statement.

17. As of the date of this Objection, the parties remain in negotiations regarding whether and how the offers received in connection with the Joint Marketing Proposal may be utilized to conclude these cases.

**E.     CNC's Claim**

18.     On September 8, 2009, CNC[4] filed its Claim in the amount of $9,102,804.00.  *See* Claim No. 30.  The Claim is filed as a priority claim, in an undetermined amount, pursuant to sections 507(a)(4) and (8) of the Bankruptcy Code.

19.     The Claim is signed by Chowdary Yalamanchili, as President of CNC.  Mr. Yalamanchili serves as (i) the President of Amaravathi Management, LLC,[5] and (ii) the President of Amaravathi Keerthi Management, LLC,[6] each of which have executed schedules and other documents on behalf of the Debtors.

### IV.     OBJECTION TO CNC CLAIM

**A.     The Claim is Unsubstantiated**

   **(i)     *The Bankruptcy Code and Rules Require Documentary Substantiation of Claims***

20.     A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects.  *See* 11 U.S.C. § 502(a); FED. R. BANKR. P. 3001(f).  However, proofs of claim that fail to comply with the Bankruptcy Rules are not *prima facie* valid and are thus not deemed allowed.  *See In re Gilbreath*, Case No. 08-32404-H4-13, 2009 Bankr. LEXIS 3909, at *6-*7 (Bankr. S.D. Tex. Nov. 19, 2009) (citing cases).

21.     Accordingly, in order to comply with the Bankruptcy Rules and create a *prima facie* valid claim, a claimant must attach supporting documentation or explain why such documentation is not available.  *See, e.g., Litto Loan Servicing, L.L.P. v. Eads (In re Eads)*, 417

---

[4] The claimant, "CNC Investments," is a related entity (via common ownership) to CNC Management, Ltd., L.L.P. ("**CNC Management**"), a Texas limited liability partnership, which manages the Properties for the Debtors pursuant to Management Agreements entered into between CNC Management and the Debtors.

[5] *See* Amaravathi LP Schedules [Dkt. No. 36].

[6] *See* Keerthi Schedules [Dkt. No. 38].

B.R. 728, 747 (E.D. Tex. 2009) ("[A]n objection to a claim based upon insufficient documentation that the claimant is the current holder of the claim is a defense that would be available to the Debtor in a suit on the claim and is, therefore, a valid basis for disallowance of a claim under § 502(b)(1) of the Bankruptcy Code.").

> Bankruptcy Rule 3001(a) mandates that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(a). Additionally, Bankruptcy Rule 9009 states that the Official Forms "shall be observed." Fed. R. Bankr. P. 9009. Paragraph 7 of the official proof of claim form (Form 10) directs the creditor to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements" or a summary of such documents. Paragraph 7 of Form 10 also directs that "[i]f the documents are not available, please explain." It is difficult to understand how a creditor could substantially comply with this instruction by filing a bare bones proof of claim without any explanation. At the very least, Form 10 instructs creditors to give a reason why supporting documents have not been attached.
>
> Moreover, Bankruptcy Rule 3001(c) provides that when a claim is based on a writing (i.e. a credit card agreement), "the original or duplicate shall be filed with the proof of claim," and "[i]f the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Fed. R. Bankr. P. 3001(c). **This language could not be more clear--creditors must attach documents giving rise to a claim (or copies of such documents) to their proof of claim or explain why they have not.**

*In re Gilbreath*, 2009 Bankr. LEXIS 3909, at *8-*9 (emphasis added, footnote omitted).

22. Once a movant objects to a proof of claim, the claim's validity becomes a "contested matter" and the burden shifts back to the creditor to prove the claim is valid by a preponderance of the evidence. *See* 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260-61 (5th Cir. 1998); *In re Fid. Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988). The movant shall have no evidentiary burden to overcome when the claim is not *prima facie* valid. *In re Gilbreath*, 2009 Bankr. LEXIS 3909, at *15-*16 (citing *ECast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 316-17 (S.D. Tex. 2007)).

23. Section 502(b) of the Bankruptcy Code governs allowance of claims and, in relevant part, provides that a claim "is unenforceable against the debtor under . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

**(ii)** *CNC's Documentation is Wholly Insufficient*

24. Based on the Claim as filed, C1 Trust and other interested parties are unable to determine whether the over $9 million claim is valid and/or appropriately asserted by CNC. The Claim thus does not comply with Bankruptcy Rule 3001 and is, as filed, unenforceable under applicable law. Importantly, but in no particular order, the Claim does not:

(1) Provide any documentation of purported loans from CNC to the Debtors;

(2) Describe any services rendered by CNC to the Debtors;

(3) Provide any documentation or explanation of a $50,000 "retainer fee";

(4) Differentiate between "CNC Investments" and "CnC Trust" and their relationship to the Debtors; [7]

(5) Provide sufficient information to determine whether CNC owns the asserted claim;[8] and

(6) Set forth any specific amount entitled to priority.

25. CNC has not satisfied its burden pursuant to Bankruptcy Rule 3001. Therefore, it has not established a *prima facie* valid Claim. Accordingly, C1 Trust hereby objects to the Claim and requests that CNC prove a basis for and amount of such Claim.

---

[7] The "Transactions by Account" accompanying the Claim suggests that the vast majority of the funds that make up the Claim amount were deposited by or transferred from "CnC Trust," presumably a distinct entity from the claimant, CNC.

[8] It is entirely unclear whether the claimant, "CNC Investments," is a proper claimant in any right. According to various Management Agreements relating to the Properties, the Debtors engaged "CNC Investments, Ltd., L.L.P." as the properties manager. According to certain pleadings filed by the Debtors, "CNC Management, Ltd., L.L.P.," a Texas limited liability partnership, manages the Properties for the Debtors. *See, e.g.,* Dkt. Nos. 101, 158. According to the Texas Comptroller listings, CNC Investments, Ltd., L.L.P. and CNC Management Inc. are existing taxable entities, neither of which are in good standing, but CNC Management, Ltd., L.L.P. does not exist.

B. **Any Claim Based on a "Loan" from CNC Should be Recharacterized as Equity**

    (i) *Recharacterization is an Equitable Remedy that Favors Substance Over Form*

26. Recharacterization is a mechanism for determining whether a party's investment in a debtor was intended as a loan, thus creating a lender/creditor relationship, or a stockholder agreement, thus creating an equity relationship. *See, e.g., Cohen v. KB Mezzanine Fund II, LP (In re Submicron Sys. Corp.)*, 432 F.3d 448, 456 (3d Cir. 2006). The doctrine is "grounded in [] courts' equitable authority to ensure 'that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.'" *Id*. at 454. "Recharacterization of debt as equity is appropriate where the circumstances show that a debt transaction was 'actually [an] equity contribution [] *ab initio*.'" *In re Estill Med. Techs., Inc.*, Case No. 01-48064, 2003 Bankr. LEXIS 2310 at *7-*8 (Bankr. N.D. Tex. Sept. 12, 2003) (quoting *In re Cold Harbor Assocs.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)).

27. This Court possesses inherent authority to recharacterize an unsecured claim to an interest in equity pursuant to 11 U.S.C. § 105, which provides the courts with authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *In re Fabricators, Inc.*, 926 F.2d 1458, 1469 (5th Cir. 1991) ("The ability to recharacterize a purported loan emanates from the bankruptcy court's power to ignore the form of a transaction and give effect to its substance."); *Summit Coffee Co. v. Herby's Foods (In re Herby's Foods)*, 2 F.3d 128, 133 (5th Cir. 1993) (discussing bankruptcy court's ability to recharacterize debt as equity).[9]

---

[9] A recharacterization request is properly lodged by way of a claim objection, such as this Objection. *See* FED. R. BANKR. P. 7001 (not listing recharacterization); *Official Comm. of Unsecured Creditors of Russell Cave Co., Inc. v General Elec. Capital Corp. (In re Russell Cave Co., Inc.)*, 107 Fed. App'x 449, 452 n.5 (6th Cir. 2004) (stating that "Federal Rule of Bankruptcy Procedure 7001 does not list recharacterization as a matter that must be brought in a separate adversary proceeding"); *Algonquin Power Income Fund v. Ridgewood Heights, Inc. (In re Franklin Indus. Complex, Inc.)*, Case No. 01-67459, 2007 Bankr. LEXIS 3004, at *45 n.17 (Bankr. N.D.N.Y. Aug. 30, 2007) (stating the same).

28. A determination of whether a purported loan constitutes equity or debt depends on the original intent (and, in nearly every instance, the interpretation of the governing contract(s)) of the parties based on the facts and circumstances of each particular case. *In re Submicron Sys. Corp.)*, 432 F.3d at 465 (stating that "[n]o mechanistic scorecard suffices . . ."); *see also Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 838-38 (Bankr. D. Del. 2006) (reemphasizing the *Submicron Systems* holding, requiring a common sense approach, enlightened by various guiding factors, to determine the original intent of the relevant parties).

29. Nonetheless, courts have been guided by consideration of various factors, as follows:

(1) the names given to the certificates evidencing the indebtedness;

(2) the presence or absence of a fixed maturity date;

(3) the source of payments;

(4) the right to enforce payment of principal and interest;

(5) participation in management flowing as a result;

(6) the status of the contribution in relation to regular corporate creditors;

(7) the intent of the parties;

(8) 'thin' or inadequate capitalization;

(9) identity of interest between creditor and stockholder;

(10) source of interest payments;

(11) the ability of the corporation to obtain loans from outside lending institutions;

(12) the extent to which the advance was used to acquire capital assets; and

>  (13) the failure of the debtor to repay on the due date or to seek postponement.

*In re Estill Med. Techs., Inc.*, 2003 Bankr. LEXIS 2310, at *9-*10 (citing *Farr v. Phase-I Molecular Toxicology, Inc. (In re Phase-I Molecular Toxicology, Inc.)*, 287 B.R. 571, 576 (Bankr. D. N.M. 2002); *In re Cold Harbor Associates*, 204 B.R. 904, 915 (Bankr. E.D.Va. 1997) (quoting *Celotex Corp. v. Hillsborough Holdings Corp. (In re Hills-borough Holdings Corp.)*, 176 B.R. 223, 248 (M.D.Fla. 1994)).[10]

### (ii) The Factors Heavily Favor Recharacterization

30. As indicated above, it is impossible to determine from the face of the Claim the relationship between CNC and the Debtors – and more generally whether CNC is the proper claimant at all.[11] However, due to known relationships between Mr. Yalamanchili, the Debtors, and CNC, it is clear that CNC is an "insider" of the Debtors, as that term is defined by the Bankruptcy Code, because it is a corporation/partnership that is either in control of the Debtors or is related to persons or entities in control of the Debtors. Accordingly, factors (5) and (9) militate in favor of recharacterizing the Claim.

31. Moreover, on information and belief, the Claim's lack of documentary support does not stem from oversight on the part of the Claim preparer, but instead is suggestive of the intent of CNC. Simply stated, no loan agreement or other documents are attached to the Claim

---

[10] *See also Official Comm. of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Techs., Inc.)*, 299 B.R. 732, 740 (Bankr. D. Del. 2003) (applying the Sixth Circuit's eleven-factor test to determine whether a debt should be recharacterized as equity) (citing *Bayer Corp. v. Mascotech, Inc. (In re Autostyle Plastics, Inc.)*, 269 F.3d 726, 750-53 (6th Cir. 2001) (applying the following recharacterization factors: "These factors include: (i) the names given to the instruments, **if any**, evidencing the indebtedness; (ii) the presence or absence of a fixed maturity date and schedule of payments; (iii) the presence or absence of a fixed rate of interest and interest payments; (iv) the source of repayments; (v) the adequacy or inadequacy of capitalization; (vi) the identity of interest between the creditor and the stockholder; (vii) the security, if any for the advances; (viii) the corporation's ability to obtain financing from outside lending institutions; (ix) the extent to which the advances were subordinated to the claims of outside creditors; (x) the extent to which the advances were used to acquire capital assets; and (xi) the presence or absence of a sinking fund to provide repayments") (emphasis added)).

[11] C1 Trust, via its Bankruptcy Rule 2004 examination of Mr. Yalamanchili and Mr. Tim Sedgwick, believes that CNC is a mere conduit to various individual investors assembled and controlled by Mr. Yalamanchili.

because they do not exist and thus were not contemplated at the time funds were advanced. Therefore, consideration of factors (1), (2), (3), (4), (6), (7), (10), and (13) strongly suggests that CNC intended to infuse working capital via an equity contribution, rather than to enter into a loan with the Debtors.

32. Without at least a note evidencing the "loan," repayment terms, interest payments, enforcement rights, and the like are wholly unidentifiable. Unsurprisingly, claimants, such as CNC, contesting recharacterization of their claim have faced severe impediments when they cannot provide documentation supporting their alleged debt. *In re Franklin Indus. Complex, Inc.*, 2007 Bankr. LEXIS 3004, at *49 (relying, apparently heavily, on the fact that no documentation of the alleged loan could be provided when distinguishing the *Adelphia* case and denying dismissal of the recharacterization claim); *In re Newfound Lake Marina, Inc.*, No. 04-12192-MWV, 2007 Bankr. LEXIS 3185, at *11 (Bankr. D.N.H. Sept. 14, 2007) (recharacterizing debt to equity because no instrument was made evidencing any debt and because the claimants were the very persons running the business); *see also In re Herby's Foods*, 2 F.3d at 132 (insider secured loan was equitably subordinated where insiders intentionally misrepresented debtor's financial condition to other creditors by not initially reflecting the loan on the debtor's books and later listing it as unsecured; <u>no loan agreement existed;</u> and debtor was undercapitalized from date it was acquired by insider). On these facts, alone, recharacterization is appropriate.

33. Additionally, pursuant to the C1 Trust Loan Documents, the Debtors were contractually limited in their ability to incur additional debt. Each of the applicable Deeds of Trust provide:

> Borrower represents, warrants and covenants as of the date hereof and until such time as the indebtedness secured hereby is paid in full, that Borrower:
>
> . . .

> has not incurred and will not incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation), other than (i) the secured indebtedness, and (ii) unsecured trade and operational debt incurred in the ordinary course of business not outstanding for more than sixty (60) days with trade creditors and in amounts as are normal and reasonable under the circumstances, but, in no event, to exceed two percent (2%) of the debt evidenced by the [respective Notes] . . . .

Deeds of Trust, Art. 1.32(d), representative copy attached as Exhibit C to C1 Trust's Proof of Claim, Claim No. 29.

34. Thus the operative Deeds of Trust prevented the Debtors from entering into the alleged "loans" to which the CNC Claim is based. Accordingly, factor (11) weighs in favor of recharacterizing CNC's debt to equity.[12]

35. For the foregoing reasons, C1 Trust hereby objects to the Claim of CNC to the extent such Claim is based on "money loaned," and requests than any such "loans" be recharacterized as CNC's, or its constituencies', equity infusion.

## C.   The Claim is Not Entitled to Priority

36. The Claim also requests for at least partial priority treatment based on Bankruptcy Code section 507(a)(4) and (8). CNC has no basis for any such assertion of priority.

37. Section 507(a) provides in relevant part:

The following expenses and claims have priority in the following order:

(4) Fourth, allowed unsecured claims . . . for each individual or corporation . . . for—(A) wages, salaries, commissions, including vacation, severance, and sick leave pay earned by an individual; or (B)sales commissions earned by an individual or by a corporation with only 1 employee . . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts . . . (B)a property tax . . . (D) an employment tax on a wage, salary, or commission of a kind specified in paragraph (4) . . . .

---

[12] Because, among other reasons, the factors each weigh so heavily in favor of recharacterization, C1 Trust has not undertaken the effort and expense necessary to establish undercapitalization at the time the various funds were allegedly advanced by CNC. However, C1 Trust reserves the right to so contend at a later date.

11 U.S.C. § 507(a)(4), (8).

38.     Neither asserted priority level applies to CNC, an insider of the Debtor and <u>not</u> an employee or governmental unit.

39.     "The purpose of allowing a priority for wages is to alleviate hardship on workers who lose their jobs or part of their salary by bankruptcy."  4 *Collier on Bankruptcy* ¶ 507.06[1] (Matthew Bender 15th ed. Rev. 2009).  "When a debtor fails to pay debts to its other creditors, those creditors presumably have other sources of income and do not rely on the debtor as their sole source of income.  Another distinction is that other creditors presumably knowingly extended credit to the debtor.  Employees do not typically view themselves as extending credit by waiting for their paychecks."  *Id*.  "By its terms, the priority under section 507(a)(4) is, with one [inapplicable] exception, available only to individuals."  *Id*. at ¶ 507.06[3]; *see also Peninsula Nat'l Bank v. Allen Carpet Shops, Inc. (In re Allen Carpet Shops, Inc.)*, 27 B.R. 354, 357-58 (Bankr. E.D.N.Y. 1983) (finding that debtor's bank that cashed payroll checks not to be an assignee of wage claims, but instead extended credit to debtor by making an overdraft available).

40.     Likewise, the eighth priority is specifically limited to "claims of governmental units" for certain taxes owed.  And while not asserted by CNC, the law is clear that subrogated parties are not entitled to the same priority status as its subrogors.  11 U.S.C. § 507(d); *see, e.g., In re Ted True, Inc.*, 94 B.R. 423, 426 (Bankr. N.D.Tex. 1988) (creditor not allowed priority status for debt arising from its involuntary payment of debtor's taxes) (citing cases).

41.     Finally, to the extent CNC may assert that it is entitled to be subrogated to any potential claims entitled to priority under section 507(a)(4) or (a)(8), section 507(d) of the Code specifically prohibits any subrogation to the right of a holder of such claim to priority under such

subsection. Therefore, there appears to be no basis in law for CNC to assert a priority claim against the Debtors' estates.

## V. PRAYER

WHEREFORE, for the reasons stated herein, C1 Trust lodges its objection to CNC's Claim pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3001, reserves its rights to further object to the Claim and/or any amendments thereto at a later date, and respectfully requests that this Court grant any such other and further relief to which C1 Trust may be justly entitled.

[*Remainder of Page Intentionally Left Blank*]

Dated: January 19, 2010
      Houston, Texas

Respectfully submitted,

**FULBRIGHT & JAWORSKI, L.L.P.**

By: /s/ *William R. Greendyke*
William R. Greendyke
State Bar No. 08390450
Southern District Admission No. 576573
Mark A. Platt
State Bar No. 00791453
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200

    and

R. Andrew Black
State Bar No. 02375110
Southern District Admission No. 09040
John D. Cornwell
State Bar No. 24050450
Southern District Admission No. 610439
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

*Attorneys for Wells Fargo Bank, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1, acting by and through Midland Loan Services, Inc., a Delaware corporation, as special servicer pursuant to that certain Pooling and Service Agreement dated March 1, 2007*

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2010, a true and correct copy of the foregoing *Amended Objection to Proof of Claim Filed by CNC Investments* [Claim No. 30] was served on all parties appearing in this case via the Court's CM/ECF automatic electronic notice system and additionally served as indicated below.

**Service Via Electronic Mail on January 19, 2010:**

Counsel for Debtors:

Kyung S. Lee
Jason M. Rudd
Brian Abramson
Diamond McCarthy LLP
909 Fannin, Suite 1500
Houston, TX 77010

U.S. Trustee:

Office of the U.S. Trustee
515 Rusk, Room 3516
Houston, TX 77002

Counsel for CNC and Chowdury Yalamanchili:

John P. Melko
Gardere Wynne Sewell LLP
1000 Louisiana Suite 3400
Houston, TX 77002-5011

Daniel C. Scott
Gardere Wynne Sewell LLP
1601 Elm, Suite 3000
Dallas, TX 75201-4761

**Service Via U.S. First-Class Mail on January 19, 2010:**

Claimant:

CNC Investments
4420 FM 1960 West, Suite 224
Houston, TX 77068

Debtors:

Amaravathi Limited Partnership
4420 FM 1960 West, Suite 224
Houston, TX 77068

Amaravathi Keerthi, LLC
4420 FM 1960 West, Suite 224
Houston, TX 77068

  /s/ John D. Cornwell
John D. Cornwell
State Bar No. 24050450
Southern District Admission No. 610439

*Counsel for Wells Fargo Bank, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1, acting by and through Midland Loan Services, Inc., a Delaware corporation, as special servicer pursuant to that certain Pooling and Service Agreement dated March 1, 2007*